UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EMERGING MATERIAL TECHNOLOGIES, INC.,

A Delaware Corporation, and

RADION MOGILEVSKY,

            Plaintiffs,

vs.                                     CASE NO.: 09 CV 3903

                                     Judge:

RUBICON TECHNOLOGY, INC., a publicly traded Delaware Corporation,

            Defendant.

_____/

## **COMPLAINT**

      NOW COME EMERGING MATERIAL TECHNOLOGIES, INC., (hereinafter, EMT), a

Delaware Corporation, and RADION MOGILEVSKY, (hereinafter, DR. MOGILEVSKY), by

and through undersigned counsel, and hereby file this Verified Complaint against the Defendant,

RUBICON TECHNOLOGY, INC., (hereinafter and interchangeably as RUBICON companies),

a Delaware Corporation, and allege as follows:

1. This is an action for damages, which exceed One Hundred Thousand Dollars
   ($100,000.00), excluding attorney fees and costs and treble damages.

2. Plaintiff, EMT, is a Delaware corporation doing business in Cook County, Illinois.

3. Plaintiff, DR. MOGILEVSKY, is a President of EMT and a shareholder of RUBICON
   TECHNOLOGY, INC.'s common stock and a resident of Illinois.

4. At all material times hereto, Defendant, RUBICON TECHNOLOGY, INC., is and was a
   Delaware Corporation publicly traded on New York Stock Exchange under the symbol of
   RBCN with its principal place of business in Franklin Park, Cook County, Illinois.

5. This court has federal jurisdiction arising out of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

GENERAL FACTUAL AND SCIENTIFIC BACKGROUND

6. Plaintiff, DR. MOGILEVSKY, a Ph.D. in Solid State Physics, is a well-recognized and regarded scientist in an international arena of sapphire crystal growers having published over 50 professional articles and made prominent discoveries in the crystal market. He has crystal growth experience from the Russian Academy of Sciences in Kiev, Ukraine; the University of Chicago, Enrico Fermi Institute, and Argonne National Laboratory.

7. DR. MOGILEVSKY, through his company, S&R RUBICON, INC., began to market outside of Russia sapphire crystals grown utilizing the most efficient method to grow sapphire and named it the Kyropoulos method.

8. Sapphire has become a preferred material for applications in LEDs, memory storage, nuclear techniques, etc.[1]

9. The Kyropoulos method is a crystal growth technique producing high-quality sapphire crystals for use in sapphire products. It established greater control over the crystal growth process while maintaining minimal temperature variations.[2]

---

[1]. It is estimated the sapphire industry will grow from a "cottage industry" in 2000 to a $400 million industry by 2012. *Hydrogen Effect on the Properties of Sapphire,* Mittl Scott, Insaco, Inc., et al, presentation at SPIE conference- Defense, Security+Sensing, Orlando, April 15, 2009; quoting, Sapphire Market 2008, Research Report # YD4303 - Yole Development, France, October, 2008.

[2] *"Unlike other techniques, the growing sapphire crystal exists in an unconstrained, low stress environment inside a closed growth chamber. The closed system allows for enhanced control of the melt, resulting in higher quality crystals. The temperature gradient between the melt and the crystal is significantly lower than in other crystal growth techniques. These aspects enable to grow crystals that have a significantly lower dislocation density, higher crystal purity and higher uniformity than sapphire crystals grown using other techniques. The subject technique provides an inherent annealing process once the crystal is fully grown. This thermal annealing is an integral means of relieving stress in the crystal. " See,* Exhibit C.

10. In 1926, a German scientist, Kyropoulos, developed the subject method used at the time to grow crystals, but not sapphire crystals.[3]

11. In 1970, a Russian scientist, Musatov, applied modifications to the method developed by Kyropolous to grow sapphire crystals and named it the GOI method and held a Russian patent from 1970 through 1990.[4]

12. Prior to 1995, the Kyropoulos method to grow sapphire crystals  was only known and utilized in Russia under the name of the GOI method.

13. In 1995, DR. MOGILEVSKY found S&R RUBICON, INC. and together with his family was 100% shareholder of this Illinois-based company importing crystals grown in Russia under the GOI method.

14. DR. MOGILEVSKY through his company, S&R RUBICON, INC., began to market outside of Russia the sapphire crystal growth technique under the name, the Kyropoulos method, in that the GOI method had its root and most resembled the Kyropoulos' discovery.

15. In 1996 through 1998, S&R RUBICON, INC. owned and operated a Russian factory growing crystals utilizing the Kyropoulos method and named the factory, Rubicon Russia. [5]

---

[3]   *Sapphire & Other Corundum Crystals,* by E. Dobrovinskaya, et al, Institute for Single Crystals, Ukraine, 2002, pg. 102- Kyropoulos method).  [The book cites to year 1930, however, 1926 is the accurate year].

[4.]   *Id.,* quoting, *Bakeable Dielectrics, M*usatov. M.I., M.:Atomizdat, 1980, pg. 117); and *Book of Lectures Notes* [cid],  Musatov M.I., pg. 624, First Int. School on Crystal Growth Technology, Switzerland, 1998.

[5]   *"Synthetic Corundum* [Corundum, commonly referred by the Russians, is a synonym to sapphire], *cocrystal, Factory Monocrystal JSC was established by the Concern Energomera in 1999 on the basis of productive capacity of the factory Analog (located in Stavropol city) and assets released during the liquidation of Joint Russian-American enterprise S&R RUBICON."* http://www.energomera.com/about/plants/monocrystal (April 19, 2009).

16. In 1998 through 1999, DR. MOGILEVSKY purchased and assembled 25 furnaces for the production of the sapphire crystal by the Kyropoulos method; and DR. MOGILEVSKY purchased a building in Franklin Park, Illinois, and began manufacturing crystal utilizing the same subject technique.   The building is still owned by DR. MOGILEVSKY today and is still operated by RUBICON TECHNOLOGY, INC. as its manufacturing facility.

17. In 1998, in order to market sapphire crystal to the LED market, three companies formed a consortium, whereby S&R RUBICON, INC. was to import and manufacture the substrates utilizing the Kyropoulos method; INSACO, INC. performed the polishing; and II-VI, INC.[6] contributed with marketing and sales.

18. In 1999, the first crystal grown using the Kyropoulos method was commercialized in the U.S. under the ownership and guidance of DR. MOGILEVSKY.

19. In approximately, June, 2000, S&R RUBICON, INC. was renamed RUBICON TECHNOLOGY, LLC., and DR. MOGILEVSKY and his family were 80% shareholders.

20. In 2001, due to venture capital investments, the name was once again formally changed to what it is today, RUBICON TECHNOLOGY, INC., and DR. MOGILEVKSY a Director holding approximately 30% of shares, and acted in a capacity of Chief Technology Officer and Vice Chairman of the Board through December, 2001.

21. In 2002, DR. MOGILEVSKY founded EMT, of which he and his family are 100% shareholders.

---

[6] A publicly traded company on NASDAQ under the symbol of IIVI.

22. To the best knowledge and belief, EMT is the first and only company to produce the best starting material  (crackles) (High Purity Densified Alumina (HPDA®)) to grow sapphire crystals (patent pending).[7]

23. EMT and the Defendant conduct international business within the same circle of professionals and companies.

<u>COUNT I: PERMANENT INJUNCTION</u>

24. The Plaintiffs re-allege and re-aver Paragraphs 1 through 23 above as if fully set forth herein.

25. That the Plaintiffs have a protected right, a right to accurate and truthful information about self, their professional accomplishments on the international platform of crystal growers, and their relation and contributions to the RUBICON companies.

26. That the Plaintiff, RADION MOGILEVSKY, has a protected right not to be

    *"disparage[d] in the community or among his employers, clients, employees, business partners, or prospects."*

27. A copy of the Separation Agreement drafted and executed by RUBICON TECHNOLOGY, INC. is attached hereto as Exhibit "A."

28. That EMT and its founder, DR. MOGILEVSKY, developed a method (patent pending) for producing the Highest quality and Purity raw materials (cracles) called, High Purity Densified Alumina (HPDA®).  This material is used by many sapphire crystal growth manufacturers like RUBICON.

---

[6.] EMT developed a proprietary plasma enhanced method of aluminum oxide densification. It is the only company producing the highest purity, 99.999%, raw material for the crystal growth industry. The Company's new plasma densification method (patent pending) will generate high purity high density aluminum oxide (HPDA®) crackles in the shapes of cylinders and microspheres.  www.emtinc.us (April, 22, 2009).

29. That EMT markets its HPDA® starting material worldwide as the best starting material, in that it is scientifically proven to be the best.[8]

30. That implementation of the HPDA's® starting material in crystal growth results in the following benefits superior to any other starting materials on the market today:

   a.   Improvement in optical and mechanical properties of sapphire;

   ~~b.~~   Up to 25% higher yield of crystals;

   c.   Virtually non-existent presence of hydrogen, therefore, up to 40% higher transmission and higher mechanical strength.

   d.   At least 20% less expensive than the crackles produced by the Verneuil growth process.

31. That RUBICON TECHNOLOGY, INC. purchases and utilizes the crackles produced by the Vermeuil growth process, and not the HPDA's® starting material.

32. That RUBICON TECHNOLOGY, INC. and its Board Members and employees, continuously and systematically circulate false information about its own methods used to grow sapphire crystal, under the terms of, but not limited to:

> *"unique"* crystal growth method, *"the highest available purity,"* *"proprietary ES2,"* *""fewer than 100 defects per square centimeter which is significantly better than the industry standard range", " we have developed a full in house capacity to design, build... ES2 crystal growth furnaces with proprietary features," "The temperature gradient between the melt and the crystal in the ES2 technique is significantly lower than in other crystal growth technique"* and that their sapphire has *"ultra high (99.999%) purity levels."*[9]

---

[8]   *Optical Materials,* Mittl Scott, Insaco, Inc., et al, Science Direct, 2009, doi:10.1016/j.optpat.2008.11.023; and *Optical Properties of Sapphire,* Mittl Scott, Insaco, Inc., et al, presentation at SPIE conference, Aug. 2008, 7056-10 v.3 p.1

[9]   Prior to the use of ES2, RUBICONE TECHNOLOGY, INC. refered to the same method as Kyr-plus.  *See, "Rubicon Technology, Crystal Clear,"* by Jennifer Monroe, November, 2002, http://www.themanufacturer.com/us/profile/704/Rubicon_Technology?PHPSESSID=c88bc (April 18, 2009).

33. That such false information continuously communicated worldwide via media, professional conferences and SEC filings irreparably damages the Plaintiffs' reputation and accomplishments and causes great harm, in that it is the Plaintiffs whom possess and market scientifically proven to be the best raw material.

34. That it further causes great harm to RADION MOGILEVSKY, as a shareholder of RUBICON, in that the material information within the SEC filings is false. Therefore, it is not RUBICON TECHNOLOGY, INC. with its, purportedly, "unique," "proprietary," and "highest clarity crystal" accomplishments.

35. That such false information causes EMT's customers and prospective customers to question the quality of the product EMT manufactures and markets. It further disparages DR. MOGILEVSKY's professional reputation as a leader of the global community of crystal growers.

36. That additionally, RUBICON TECHNOLOGY, INC. and its Board Members and employees, continuously and systematically circulate false information about RUBICON's corporate and technological history by spreading a fictional story about the following: omitting thus misleading the public as Rubicon fails to attribute credit to DR. MOGILEVSKY's key role in introducing the Kyropoulus sapphire crystal growth method to the world; that DR. MOGILEVSKY, single-handedly, built the first manufacturing facility to grow sapphire crystal in the United States, that the first crystal was grown in 1999, and not in 2000; all of which disparage and erase DR. MOGILEVSKY's accomplishments.

37. That the above topics have been woven into a phantom story about RUBICON evolution and its achievements to date.

38. That the Defendant's myth directly contradicts all DR. MOGILEVSKY's life's achievements as a leader in the world of science, thus effectively stripping DR. MOGILEVSKY of his accomplishments and causing him great embarrassment among the colleagues.

39. That the plethora of false statements, contrary to the true statements DR. MOGILEVSKY communicates, are irreparably damaging to the Plaintiffs.

40. That by creating a myth, RUBICON creates room for further lies, such as its growth method is proprietary and its crystal has the highest available purity and quality.

41. That the Plaintiffs will suffer irreparable harm if injunctive relief is not granted, in that the Defendant continues to disseminate into the public market false and deceptive information about the Plaintiffs as well as false and deceptive information about RUBICON TECHNOLOGY, INC.'s purportedly "proprietary ES2" method and the highest purity material; false story about evolution of the RUBICON companies; and DR. MOGILEVSKY's relation and contributions toward same, or an implication of lack thereof.

42. That such false and deceptive information is further communicated in its SEC 10K filing. *See,* attached hereto SEC 10K filing as Exhibit "B."

43. That such false and deceptive information, once disseminated into the market by way of SEC form 10K filings; through the media; professional journals; multiple written national and international publications with general audience; and during professional, international conferences; cannot be retracted with sufficient certainty that the same readers, participants and shareholders will ultimately learn of the truth and had not acted upon the falsities disseminated by the Defendant.

44. That the Plaintiffs do not have an adequate remedy at law.

45. That the Plaintiffs have a likelihood of success on the merits.

WHEREFORE, Plaintiffs request this Honorable Court to enter permanent injunction against the Defendant, and provide such further relief as is deemed just and equitable.

COUNT II: FRAUDULENT MISREPRESENTATION

AND

COMMON LAW FRAUD AGAINST

46. Plaintiffs re-allege and re-aver paragraphs 1 through 45 above as if fully set forth herein.

47. That the Defendant made and continues to make false statements of material facts when it communicates to the world through various media outlets a phantom story about RUBICON TECHNOLOGY, INC.'s origin and its founder(s), evolution of sapphire crystal, RUBICON TECHNOLOGY, INC.'s purportedly "proprietary" method of sapphire crystal growth and its crystal is purportedly of the purest and highest quality, and providing credit and glorifying an individual that did not partake in the making of the true history, thus creating and disseminating a myth heard by an infinite amount of people in the world.

48. That a few of the false articles published upon receipt of the false information from RUBICON are as follows:

A. **_"Evolution of the sapphire industry: the origins of Rubicon Technology and Gavish,"_** DANIEL C. HARRIS; SPIE, 2009, Volume 7302, paper 730201.

49. The Article (hereinafter, EVOLUTION) is attached hereto as Exhibit "C."

50. Defendant communicated false information for the article.

51. Defendant's employees are expressly identified therein as the contributors to the article's

false information.

52. Specifically, the subject article falsely states:

> *In 1995, Dobrovinskaya emigrated to the United States and in 2000 she helped found Rubicon Technology in Chicago to commercialize the Kyropoulos method to produce high quality sapphire substrates for the solid state lighting industry.* (Exhibit "C," EVOLUTION, pg.1, Abstract).

53. The above statement is false, in that:

a. In 1995, DR. MOGILEVSKY founded S&R RUBICON, INC. of which he was 100% shareholder.

b. In 2000, S&R RUBICON, INC. was renamed as RUBICON TECHNOLOGY, LLC, DR. MOGILEVSKY and his family were 80% shareholders;

c. Most importantly, the Kyropoulos method to grow sapphire was commercialized in 1999, and not in 2000, when it was still S&R RUBICON, INC. DR. MOGILEVSKY purchased the building in Franklin Park, Illinois,[10] installed 25 furnaces, built infrastructure and manufactured the first sapphire crystal in 1999.

d. To the best knowledge and belief, Elena Dobrovinskaya was never a member of any of the RUBICON companies science/technology team, and since 1995 through 2000, she was a sales consultant, and subsequently, acted in a capacity of a sales associate, to date.

54. Specifically, the subject article further states:

> *Rubicon's crystal growth has many trade secrets and has been trademarked as "ES2" crystal growth technology by Rubicon. blue light-emitting diode (LED).*

---

[10] Presently, still under DR. MOGILEVSKY's ownership and utilized as the same manufacturing facility by the Defendants.

55. The above statement is false, in that:

    a. All companies growing sapphire crystal utilize the same method.[11]

    b. The author quotes in its article a book written by the RUBICON employee, ELENA DOBROVINSKAYA, wherein she describes the crystal growth method utilized in Russia <u>and</u> in the U.S., and the furnaces being purchased from Ukraine; thereby admitting there is no trade secret about the method.[12]

56. Specifically, the subject article further states:

> *This motivational name was adopted by the founders of Rubicon Technology when they developed technology and began to manufacture high-quality sapphire in Chicago in 2000.* (Exhibit "C," EVOLUTION, pg. 4, The Die Is Cast).

57. The above statement is false, in that:

    a. In 2000, there was only one founder, DR. MOGILEVKSY, and not multiple founder**s**.

    b. Once again, the manufacturing began in 1998 and first crystal was grown in August of 1999. The years are germane, in that the sapphire crystal was first manufactured in 1999 and the facility was fully operational by then.

58. Specifically, the subject article further states:

> *The founders understood the need and recognized the potential demand for sapphire as a substrate for blue light-emitting diodes (LEDs) in the emerging solid-state lighting industry.* (Exhibit "C," EVOLUTION, pg. 4, Rubicon Technology).

---

[11] Russia: Monocrystal; Atlas; and Exiton; Ukraine: JSC "Technocrystal," Subsidiary Company "UIS-Crystal"Ltd.; Poland: Huta Szkla Kwarcowego "Jurapol;" Netherland: CrystalQ; Taiwan: ACME electronics Corporation; Tera Xtal; Wafer Works; and Sino-America.

[12] Defendant, DANIEL C. HARRIS, quoting, *Sapphire & Other Corundum Crystals,* by E. Dobrovinskaya, et al, Institute for Single Crystals, Ukraine, 2002, pg. 102- Kyropoulos method).

59. The above statement is false, in that:

   a. The term- "The founders," is extremely misleading, in that it is one founder, a sole founder of S&R RUBICON, DR. MOGILEVSKY.

   b. The accurate version is that there was only one founder- DR. MOGILEVSKY, whom "understood the need and recognized the potential demand" back in 1995. In 1996, DR. MOGILEVSKY purchased a factory in Russia, named Rubicon Russia, and began to import the subject crystal into the U.S. In 1998, in order to target the LED industry, a consortium was formed among S&R RUBICON, INC., Insaco, Inc. and II VI, Inc., a publicly traded company, to manufacture and sell sapphire crystal in the U.S. In 1999, in DR. MOGILEVSKY's manufacturing facility in Franklin Park, Illinois commercialized the very 1st sapphire crystal.

60. Specifically, the subject article further states:

   *In the first year, Rubicon expanded from one furnace to five. Over the next several years, the furnace size increased from being able to make 150-mm-diameter boules to making 200-mm-diameter boules. Boule mass increased from 7 to 15 to 27 to 31 to 85 kg.* (Exhibit "C," EVOLUTION, pg. 5).

61. The above statement is false, in that:

   a. In 1999, the first year of the crystal growth in a facility in the U.S., DR. MOGILEVSKY owned 25 furnaces, and not "one to five" furnaces. Twenty five furnaces produced up to 2 tons of sapphire per month, up to 300 mm in diameter and 30 kg of crystals. Crystals with the weight up to 65 kg were also successfully grown.

   b. The false information departs considerably from the truth and diminishes, if not completely eliminates, DR. MOGILEVSKY's accomplishments and that of his

companies, S&R RUBICON, INC. and currently, EMT, of which DR.

MOGILEVSKY and his family were and are 100% shareholders.

62. Specifically, the subject article further states:

> ... *Rubicon sapphire has high chemical purity because it is made from starting material (crackle) with the highest available purity. The concentration of any one transition metal impurity in a Rubicon boule is typically in the 1-5 parts per million range* (Exhibit "C," EVOLUTION, pg. 7).

63. The above statement is false, in that:

   a. RUBICON does not utilize the highest purety starting material, in that it has been

   scientifically proven EMT manufactures and sells the highest purety material, and

   RUBICON does not buy such material from EMT.

   b. RUBICON's boule, by its own admission is 1-5 ppm per element; whereas,

   EMT'S boule is .1 ppm per element; HPDA® starting material produces much

   better sapphire crystals with superior quality, and much higher yield and

   performance.

   c. Clearly and undisputedly EMT's material is the best. It is a scientific

   impossibility that RUBICON's starting material (crackle) is with the highest

   available purity.

64. Specifically, the suject article further states:

> *Until 2000, she* [Elena Dobrovinskaya] *was part of a small venture to import sapphire from Russia and Ukraine to the United States. This venture was the precursor to Rubicon Technology.* (Exhibit "C," EVOLUTION, pg. 8, Doctor Elena).

65. The above statement is false, in that:

a.  It is absolutely puzzling why and how ELENA DOBROVINSKAYA became to be so glorified throughout the entire article when she worked merely in a capacity of a sales consultant, later became a sales associate, and to the best knowledge and belief, remains in that capacity today. ELENA DOBROVINSKAYA never participated as a scientist during the material times hereto.

b.  Finally, until 2000, the company was no "small venture" employing 40 people, and not merely importing, but manufacturing crystals in its facility in the U.S. in 1999. Twenty five furnaces produced up to 2 tons of sapphire per month, 300 mm in diameter and 30 kg of crystals.[13] Such production is not a "small venture" by any standards; and the very first factory of this kind built in the past 50 years in the United States.

c.  Such false and deceptive statements mislead, misinform and minimize, if not eliminate, the size and capabilities of the company throughout all its years in business. Most importantly, the phantom story takes away the dutiful credit to DR. MOGILEVSKY, and instead handing it to ELENA DOBROVINSKAYA, the sales consultant/person at the time.

d.  Such intentional conduct falsifying history of the public company further portrays DR. MOGILEVSKY in false light and destroys his reputation and career, in that DR. MOGILEVSKY markets his great accomplishments to the business prospects worldwide.

66. That if the subject article or another false version of the article under the name of, "*Evolution of the sapphire industry: the origins of Rubicon Technology and Gavish,*" or a similar name, authored by DANIEL C. HARRIS, is printed and distributed by

---

[13]  30kg of crystal grows in eight-day cycles.

SPIE, it will irreparably destroy DR. MOGILEVSKY's reputation, career and livelihood.

B.  "***Let there be light; No. 26: Rubicon Technology Inc.,***" **Franklin Park.(Focus: Fast Fifty)(Company overview), (published by Crain's Chicago Business, 6/2/2008).**

67. The article (hereinafter, LET THERE BE LIGHT) is attached hereto as Exhibit "D."

68. Defendant communicated false information for the article.

69. *"Founded by Chris Moffitt in 2000…"* (LET THERE BE LIGHT, ¶5).

70. Paragraph 79 is misleading as follows:

   a.  In 2000, DR. MOGILEVSKY was the sole founder S&R RUBICON, INC., which was dissolved in Spring of 2001. In approximately, December, 2000, DR. MOGILEVSKY was 80% shareholder and Chris Moffitt was 20% shareholder.

   b.  However, the Defendant continues to create a myth as to whom found and contributed to the RUBICON's success and its evolvement, thus effectively disparaging DR. MOGILEVSKY to the community or among his employers, clients, employees, business partners, or prospects.

71. *"Mr. Moffitt, an IT consultant, became interested in the crystals when his father-in-law* [DR. MOGILEVSKY]*, a former scientist in Russia, told him about the technology used in his homeland. Sensing it could revolutionize the lighting industry, Mr. Moffitt recruited the chief scientist* [ELENA DOBROVINSKAYA] *at a government laboratory in Ukraine."* (Exhibit "D," LET THERE BE LIGHT, ¶5-6).

72. Paragraph 81 is false as follows:

   a.  Throughout RUBICON's history, no one was ever recruited from *"… a*

*government laboratory in Ukraine,"* rather it was DR. MOGILEVSKY himself whose experience included work for the government laboratory.

b.  At that point, Chris Moffitt, an IT professional, was not in any position to recruit scientists in crystal growth.

c.  RUBICON, throughout its phantom history, glorified ELENA DOBROVINSKAYA into a chief scientist for the entire life of the RUBICON's companies, from 1995 onward.  She was never a chief scientist in the U.S. from 1995 through 2001, and to the best knowledge and belief has never been a chief scientist (short for the title); she has been in this country since 1995, and therefore, could not have been recruited in 2000 from the Ukraine.

C.      "***Rubicon Technology, Inc.: From Russia, with sapphires,***" **(by Richard Brandt, Jan 24, 2008, http://www.smallcapinvestor.com/home/default/2008-01-24-rubicon_technology_inc_from_russia_with_sapphires, April 18, 2009).**

73. The article (hereinafter, FROM RUSSIA, WITH SAPPHIRES) is attached hereto as Exhibit "E."

74. Defendant communicated false information for the article.

75. *"Rubicon, whose chief scientist is Russian, has refined those techniques into a proprietary process that allows it to create the largest and purest sapphire wafers on the market."* (Exhibit "E," FROM RUSSIA, WITH SAPPHIRES, ¶3).

76. Paragraph 84 is false as follows:

a.  Once again, the glorified Russian Chief Scientist is ELENA DOBROVINSKAYA who acted in a capacity of a sales consultant at the time, and to the best knowledge and belief, became a sales associate through present.

b. The process is not proprietary, the whole world uses the same process; the very same process DR. MOGILEVSKY brought to the U.S. in 1998.

77. *"A Dec. 26, 2007, report by CIBC World Markets notes that its technology "is extremely difficult to duplicate…"* (Exhibit "E," FROM RUSSIA, WITH SAPPHIRES, ¶5).

78. Paragraph 86 is false as follows:

a. The technology is not extremely difficult to duplicate, in fact it is fairly simple, that is why at least six more companies began the same crystal growth process in the past few years and a number of such companies is growing exponentially worldwide.

b. Ukraine and Russia manufacture crystal growth equipment, and RUBICON TECHNOLOGY, INC. is one of the companies to purchase and utilize their equipment.

79. Defendant had knowledge or belief of the falsity of the statements when they made them. Interestingly, RUBICON'S own employee wrote a book on the subject matter in 2002, and RUBICON occasionally communicated accurate information in the past.

80. The article with the accurate story was published in The Manufacturer under the name *"Rubicon Technology, Crystal Clear,"* by Jennifer Monroe, November, 2002, http://www.themanufacturer.com/us/profile/704/Rubicon_Technology?PHPSESSID= c88bc (April 18, 2009), (hereinafter, CRYSTAL CLEAR), is attached hereto as Exhibit "F."

81.

*"Established in 1995 with just two employees, Rubicon Technology started as a dealer of sapphire and other high-density single crystal products. At that time, Rubicon imported its crystals*

*primarily from Russia. As demand for the blue LED increased, Rubicon's mission changed. The company became not only a distributor of crystals but also a grower, fabricator, and polisher of sapphire substrates. Instead of adopting the processes used by its competitors, Rubicon decided to capitalize on its contacts in Russia. Familiar with the quality of Russian technology, the company imported Kryopoulous* [cid] *processes and technology to grow quality, large-diameter, high-density single crystal sapphire.." By the end of 2000, its manufacturing facilities in Chicago were brought on-line with researchers and furnaces imported from Russia… The technology development center was built in 1999 to house the first phase of crystal growth, furnaces, and infrastructure. (Exhibit "F," CRYSTAL CLEAR, ¶4-7).*

82. The above article is believed to be the last accurate story RUBICON TECHNOLOGY, INC. chose to communicate to the public before it began to market the myth to the world.

83. Defendant intended that the statements induce Plaintiffs, the investors and the general public to act, in that the Defendant knew that in order to obtain and capitalize on the investments, they had to hide the unsuccessful financial past, create a new and plausible, fictional story, which purportedly did not begin until 2000, and further create a purportedly "unique" attribute, ES2, with purportedly the purest grown sapphire crystals, to set itself apart from the rest.

84. The Plaintiffs, the investors and the general public justifiably relied upon the truth of the statements and invested with the Defendant.

85. Plaintiffs were harmed and continue to suffer irreparable harm to their reputation in the world arena of crystal growers, in that with each story and with each presentation, the Plaintiffs' reputation and great contributions are being wiped out as if though they never existed.

86. Consequently, Plaintiffs suffered and continue to suffer considerable monetary damages as a direct result of the Defendant lies.

WHEREFORE, Plaintiffs request this Honorable Court to award damages, punitive damages, and provide such further relief as is deemed just and equitable.

<u>COUNT III: DEFAMATION *PER SE*</u>

87. Plaintiffs re-allege and re-aver paragraphs 1 through 86 above as if fully set forth herein.

88. That the Defendant made and continues to make false statements about DR. MOGILEVSKY;

89. That the Defendant further makes false statements about its product performance and/or qualities, and in turn misleading EMT's customers, prospective customers, scientists, and RUBICON's shareholders and the general public of EMT's true product performance;

90. That the Defendant made an unprivileged publication of those statements to a third party, to be specific, to the entire international community of scientists and investors; and

91. That such communications damaged DR. MOGILEVSKY and EMT, in that the statements impeached the Plaintiffs' reputation and thereby lowered them in estimation of the community and/or deterred third parties from associating with them.

92. Specifically, customers and/or potential customers question the Plaintiffs abilities in their business and contributions in a scientific arena, and their product's performance, thereby shying away from doing business with the Plaintiffs and/or lowering their reputation in the scientific community.

WHEREFORE, DR. MOGILEVSKY and EMT request this Honorable Court to award

damages, punitive damages, and provide such further relief as is deemed just and equitable.

<u>COUNT IV: BREACH OF SEPARATION AGREEMENT</u>

93. Plaintiff, RADION MOGILEVSKY, re-alleges and re-avers paragraphs 1 through 92

above as if fully set forth herein.

94. That on or about February 7, 2002, DR. MOGILEVSKY and RUBICON

TECHNOLOGY, INC. executed a Separation Agreement.

95. A copy of the subject Agreement is attached hereto as Exhibit "A."

96. That, specifically, Section 4(b) of the Agreement in its pertinent part states:

> *"The Company* [RUBICON TECHNOLOGY, INC.] *agrees that it*
> *will not make any oral or written statements about Mogilevsky or*
> *his financial condition which are intended or reasonably likely to*
> *disparage Mogilevsky in the community or among his employers,*
> *clients, employees, business partners, or prospects."*

97. That the Plaintiff recently discovered (in 2009) the Defendant has been breaching the

Agreement multiple times by making or causing to be made oral and written

statements about DR. MOGILEVSKY that were intended or were reasonably likely to

disparage DR. MOGILEVSKY in the community, among his employers, clients,

employees, business partners, or prospects.

98. That the Defendant further breached the Agreement by omitting to make statement of

a material fact knowing such omissions would and did disparage DR.

MOGILEVSKY's reputation within the community.

99. DR. MOGILEVSKY retained counsel to represent him in this litigation, and he is

incurring reasonable attorney fees and costs as a result, pursuant to the subject

Agreement.

WHEREFORE, DR. MOGILEVSKY requests this Honorable Court to award damages, attorney fees and costs, and provide such further relief as is deemed just and equitable.

<u>COUNT V:VIOLATION OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT</u>

100.    Plaintiffs re-allege and re-aver Paragraphs 1 through 99 as if fully set forth herein.

101.    815 Ill. Comp. Stat. 510/2(a)(7)(2009) in its pertinent part states:

*"A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another."*

102.    That in the course of RUBICON's business it makes false representations of its product as follows:

*"unique"* crystal growth method, *"the highest available purity," "proprietary ES2," "fewer than 100 defects per square centimeter which is significantly better than the industry standard range," " we have developed a full in house capacity to design, build... ES2 crystal growth furnaces with proprietary features," "The temperature gradient between the melt and the crystal in the ES2 technique is significantly lower than in other crystal growth technique"* and that their sapphire has *"ultra high (99.999%) purity levels."*

103.    That such information is false.

104.    That the Plaintiffs have been damaged by these acts.

105.    That the Plaintiffs retained counsel to represent them in this litigation, and they are incurring reasonable attorney fees and costs as a result.

WHEREFORE, Plaintiffs request this Honorable Court to award damages, punitive damages, attorney fees and costs and provide such further relief as is deemed just and equitable.

COUNT VI:    FALSE REPRESENTATION UNDER LANHAM ACT § 43(A)

106.    Plaintiffs re-allege and re-aver Paragraphs 1 through 105 as if fully set forth

herein.

107.    15 U.S.C. § 1125(a)(1)(B) (2006) in its pertinent part states:

*"Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."*

108.    That Defendant uses a false or misleading information about its product and its

quality;

109.    That such information as:

*"unique" crystal growth method, "the highest available purity," "proprietary ES2," "fewer than 100 defects per square centimeter which is significantly better than the industry standard range", " we have developed a full in house capacity to design, build… ES2 crystal growth furnaces with proprietary features," "The temperature gradient between the melt and the crystal in the ES2 technique is significantly lower than in other crystal growth technique" and that their sapphire has "ultra high (99.999%) purity levels"*

is a description of fact and/or representation of fact in connection

with goods or services and placed in interstate commerce.

110.    That the description and/or representation of its product misrepresent the nature,

qualities, or geographic origin of the Defendant's commercial activity of the

sapphire crystal.

111.    That the false information is communicated via multiplicity of media avenues and

SEC 10K filings and constitutes commercial advertising or promotion.

112.    That the Plaintiffs have been and/or are likely to be damaged by these acts.

113.    That the Plaintiffs retained counsel to represent them in this litigation, and they

are incurring reasonable attorney fees and costs as a result.

WHEREFORE, Plaintiffs request this Honorable Court to award damages, punitive

damages, attorney fees and costs and provide such further relief as is deemed just and

equitable.

## COUNT VII: VIOLATION OF SEC RULE 10B-5

114.    Plaintiff, RADION MOGILEVSKY, re-alleges and re-avers Paragraphs 1 through

113 as if fully set forth herein.

115.    The language of SEC Rule 10B-5: Employment of Manipulative and Deceptive

Practices, in its pertinent part states:

*It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,*
*(a) To employ any device, scheme, or artifice to defraud,*
*(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not deceptive, or*
*c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.*

116.    That the Defendant employed the media, oral presentations, scheme and/or

artifice to defraud the shareholders and the Plaintiff when it used a multiplicity of

media avenues and SEC 10K filings to communicate false and/or misleading

information.

117.    That the Defendant made and continues to make untrue statements of a material

fact and omits to state a material fact necessary in order to make the statements

made, in the light of the circumstances under which they were made, not deceptive.

118.   That the Defendant describes the known to the world and utilized by all within the professional community Kyropoulos method as their proprietary method under the name of "ES2."

119.   That the following is a list of companies worldwide growing sapphire crystal, all of which utilize the same method of sapphire crystal growth, and refer to the same method by the same name- the Kyropoulos method:

a.        Russia: Monocrystal; Atlas; and Exiton;

b.        Ukraine: JSC "Technocrystal," Subsidiary Company "UIS-Crystal"Ltd.;

c.        Poland: Huta Szkla Kwarcowego "Jurapol;"

d.        Netherland: CrystalQ;

e.        Taiwan: ACME electronics Corporation; Tera Xtal; Wafer Works; and Sino-America.

120.   That Rubicon further asserts a false statement of fact that it can produce crystals with "fewer than 100 defects per square centimeter which is significantly better than the industry standard range" " we have developed a full in house capacity to design, build… ES2 crystal growth furnaces with proprietary features," "The temperature gradient between the melt and the crystal in the ES2 technique is significantly lower than in other crystal growth technique" and that their sapphire has "ultra high (99.999%) purity levels (*See,* SEC filing, Exhibit "B.")

121.   The above statement is false, in that in order to achieve a purity level of 99.999%, HPDA® raw material must be utilized.  RUBICON does not utilize such material.

122. In *TSC Industries, Inc.,* the U.S. Supreme Court defined the term "material fact" as follows:

> *"an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."* <u>TSC Industries, Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976).

123. That the Defendant continuously omits to state a material fact regarding a non-existent proprietary method, thus allowing itself to create a mythical story from year 2000 onward and falsely state their sapphire crystal growth method is proprietary.

124. That the Defendant deceived and continues to deceive the shareholders that the Defendant possesses a proprietary technique to grow sapphire crystal and its crystal is of the highest purity, and there is a substantial likelihood that a reasonable shareholder would consider it important.

125. That the Defendant manipulated and deceived the shareholders and the general public into believing their method is proprietary by calling it an unrecognized on the market name, "ES2."

126. That ES2 stands for "Evolving Science. Evolving Solutions" and is nothing more than a slogan. ES2 is not a technique or a method.

127. That ES2 is not proprietary, in that it describes the Kyropoulos method used by all companies worldwide growing sapphire crystal.

128. Interestingly, RUBICON TECHNOLOGY, INC.'s employee, ELENA DOBROVINSKAYA, published a book describing the technique identical to ES2

and acknowledging it is a common method utilized in Ukraine and in the U.S.[14]

129. That the identical schematic cross section of Kyropoulos growth furnace is described by DANIEL C. HARRIS in his 2009 article on RUBICON TECHNOLOGY, INC. (Exhibit "C"), and citing to the Defendant's employee's, ELENA DOBROVINSKAYA, book published in 2002. Same method is also published on the homepages of at least three other companies in Russia, some established since 1999.

130. Copies of the purportedly "proprietary" schematic cross section of Kyropoulos growth furnace of all parties mentioned in Paragraph 129 above is attached hereto as a composite Exhibit "G."

131. That whether the method or technique is proprietary and whether the method derives the purest crystal are material and germane to all interested in the subject company and in order to ascertain prospects of the company's viability and future performance.

132. That such material description, or lack thereof, is in connection with the purchase or sale of securities, in that it is described within the SEC 10K document.

133. That DR. MOGILEVSKY is a shareholder of RBCN common stock.

134. That such omission and false and deceptive statements affect the market as a whole, which is deemed "fraud on the market." *See,* Basic Inc. v. Levinson, 485 U.S. 224 (1988).

135. That the Plaintiffs, the shareholders and the general public rely on the statements made by the Defendant, a publicly traded company on NASDAQ under the symbol

---

[14] *Sapphire & Other Corundum Crystals,* by E. Dobrovinskaya, et al, Institute for Single Crystals, Ukraine, 2002, pg. 102- Kyropoulos method).

of RBCN.

136.   That such false and deceptive statements, or material omissions, may proximately cause damages and did cause damages to the Plaintiff and all those relying on the subject statements or material omissions.

137.   Plaintiff retained counsel to represent him in this litigation, and he is incurring reasonable attorney fees and costs as a result.

WHEREFORE, the Plaintiff requests this Honorable Court to order the Defendant to correct its SEC filings to accurately reflect the method used and its origin; to award damages, treble damages, attorney fees, costs, and expert fee, and provide such further relief as is deemed just and equitable.

Mogilevsky Law Firm, P.A.
One Northbrook Place
5 Revere DR., Suite 200
Northbrook, IL 60062
847.509.5999
e-fax 815.717.9595

s/ JANE MOGILEVSKY