IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMERGING MATERIAL TECHNOLOGIES, INC. and RADION MOGILEVSKY, <br><br> Plaintiffs, <br><br> vs. <br><br> RUBICON TECHNOLOGY, INC., <br><br> Defendant. | Case No. 09 C 3903 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Emerging Material Technologies Inc. (EMT) and Radion Mogilevsky have sued Rubicon Technology Inc., under the Lanham Act and on various state law claims. Mogilevsky also has sued Rubicon under Securities and Exchange Commission (SEC) Rule 10b-5 and for breach of contract. Rubicon has moved to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants Rubicon's motion.

### Background

The Court takes the following facts from the allegations in plaintiffs' complaint and accompanying exhibits.

Mogilevsky, who has a Ph.D. in solid state physics, describes himself as a "well-recognized and regarded scientist in an international arena of sapphire crystal growers."

Compl. ¶ 6. Sapphire crystals are used in light-emitting diodes (LEDs) and memory storage, among other things.

In 1995, Mogilevsky founded S&R Rubicon Inc. They started out marketing crystals grown in a factory in Russia that S&R owned and operated. In 1998, Mogilevsky began to manufacture sapphire crystals in a Chicago suburb using what plaintiffs refer to as the Kyropoulos method. S&R formed a consortium with two other companies to market sapphire crystals to the LED market.

In June 2000, S&R Rubicon was renamed Rubicon Technology, LLC. Mogilevsky and his family owned eighty percent of the stock of Rubicon. In 2001, after venture capital investments, the name of the company was changed to Rubicon Technology, Inc. Mogilevsky held thirty percent of the stock of Rubicon and, through December 2001, served as the company's chief technology officer and vice chairman of its board of directors.

In February 2002, Mogilevsky and Rubicon entered a separation agreement with an effective date of December 21, 2001. The agreement provided, among other things, that Rubicon "will not make any oral or written statements about Mogilevsky or his financial condition which are intended or reasonably likely to disparage Mogilevsky in the community or among his employers, clients, employees, business partners, or prospects." Compl., Ex. A ¶ 4(b).

In 2002, Mogilevsky founded EMT, and he and the company developed a method "to produce the best starting material (crackles) . . . to grow sapphire crystals." Compl. ¶ 22; *see also id.* ¶ 28. According to plaintiffs, Rubicon uses crackles produced

by a different process.  Plaintiffs contend those crackles are inferior to those produced via EMT's process.  *Id.* ¶ 31.

Plaintiffs allege that "EMT and [Rubicon] conduct international business within the same circle of professionals and companies."  *Id.* ¶ 23.  They contend that Rubicon and its personnel have "continuously and systematically circulate[d] false information" about its method of growing sapphire crystals, falsely describing that method as superior and falsely describing the method's qualities.  *Id.* ¶ 32.  According to plaintiffs, this information damages EMT and Mogilevsky, "in that it is the Plaintiffs whom [sic] possess and market [what is] scientifically proven to be the best raw material."  *Id.* ¶ 33. They contend that the allegedly false information that defendants disseminate "causes EMT's customers and prospective customers to question the quality of the product EMT manufactures and markets" and "disparages Dr. Mogilevsky's professional reputation as a leader of the global community of crystal growers."  *Id.* ¶ 34.

Plaintiffs also allege that Rubicon and its personnel disparage plaintiffs by spreading what they characterize as a "fictional story" about its achievements. Specifically, plaintiffs contend, Rubicon's statements fail to credit Mogilevsky for his role in introducing the Kyropoulos method for growing sapphire crystals; omit the fact that Mogilevsky built the first U.S. facility to grow sapphire crystals; and misrepresent that the first such crystal was grown in 2000, when in fact it was grown in 1999.  *Id.* ¶ 36. This, plaintiffs allege, "effectively strip[s] Dr. Mogilevsky of his accomplishments" and causes him great embarrassment.  *Id.* ¶ 38.

Plaintiffs identify several specific articles that Rubicon personnel authored or to which they contributed, that, according to plaintiffs, contain false and misleading statements about Rubicon and its methodology. One such article, published in 2009, states that in 1995, Elena Dobrovinskaya "emigrated to the United States and in 2000 she helped found Rubicon Technology in Chicago to commercialize the Kyropoulos method to produce high quality sapphire substrates for the solid state lighting industry." Compl., Ex. C at 1. Plaintiffs allege these statements are false in that (among other things) Dobrovinskaya had no role in founding Rubicon or developing its processes and because its method was commercialized in 1999, not 2000. They also allege that the article falsely states that Rubicon's method of growing crystals relies on trade secrets and that it gives erroneous details about Rubicon's early work in growing crystals. Plaintiffs also cite other articles, allegedly published by Rubicon personnel, that contain similar allegedly misleading statements.

Plaintiffs also allege that Rubicon made false statements in an SEC 10-K filing. These statements include claims that Rubicon produces its sapphire crystals through proprietary technology and that it can produce sapphire crystals with "fewer than 100 defects per square centimeter" and "ultra high (99.999%) purity levels." Compl., Ex. B. Plaintiffs allege that these and other statements in the 10-K filing materially misrepresent the truth and "[t]hat such material description, or lack thereof [of Rubicon's methods] is in connection with the purchase or sale of securities, in that it is described within the SEC 10K document." Compl. ¶ 132. Plaintiffs allege that they, "the shareholders [of Rubicon], and the general public" rely on Rubicon's statements. *Id.* ¶ 135. Rubicon's shares are traded publicly. *Id.* ¶¶ 4 & 135.

4

Discussion

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

**1.      Securities fraud claim**

Mogilevsky asserts a claim against Rubicon under SEC Rule 10b-5, which makes it unlawful for any person to (among other things) make materially false statements in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b-5. Mogilevsky cannot pursue this claim, because he cannot possibly show that he relied on any of the claimed false statements to purchase or sell Rubicon stock. "[R]eliance is an element of a Rule 10b-5 cause of action [because it] provides the requisite casual connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988). The entire thrust of Mogilevsky's complaint is that he knows that Rubicon's statements are false. Because Mogilevsky "already possess[ed] information sufficient to call the representation into question, he cannot claim later that he relied on or was deceived by the lie." *Teamsters Local 282 Pension Trust v. Angelos*, 762 F.2d 522, 530 (7th Cir. 1985). The Court also

notes that Mogilevsky does not even attempt to allege that he purchased or sold stock based on any of the claimed misrepresentations, all of which he contends were made after he became a Rubicon shareholder.

## 2. Lanham Act false advertising claim

"[F]alse representations in advertising concerning the qualities of goods or services ('false advertising')" are actionable under the Lanham Act. *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993); 15 U.S.C. § 1125(a)(1)(B). Mogilevsky and EMT base their Lanham Act claim on Rubicon's allegedly false statements that its method for growing sapphire crystals is "proprietary" and "unique" and that the quality of its crystals is "ultra high." Compl. ¶¶ 108-111. Plaintiffs allege that they "have been and/or are likely to be damaged by these acts." *Id.* ¶ 112.

There are two interrelated problems that preclude plaintiffs from maintaining a Lanham Act false advertising claim. First, plaintiffs lack standing to sue because they do not allege that they are direct competitors of Rubicon. To sue for false advertising under the Lanham Act, the plaintiff "'must assert a discernible competitive injury.'" *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999) (quoting *L.S. Heath & Son*, 9 F.3d at 575). The Court agrees with other judges in this district who have ruled that this requires the plaintiff and defendant to be direct competitors, in other words, "that it competes at the same level of business as the defendant." *Platinumtel Comms., LLC v. Zefcom, LLC*, No. 08 C 1062, 2008 WL 5423606, at *6 (N.D. Ill. Dec. 30, 2008) (internal quotation marks and citation omitted).

6

*See also, e.g.*, *Medallion Products, Inc. v. McAlister*, No. 06 C 2597, 2008 WL 5046055, at *4 (N.D. Ill. Nov. 20, 2008) (supplier of pet stain removal products to distributors lacked standing to sue companies that sell similar products to consumers, suppliers and retailers); *Gail Green Licensing & Design Ltd. v. Accord, Inc.*, No. 05 C 5303, 2006 WL 2873202, at *5 (N.D. Ill. Oct. 5, 2006) (designer of pet clothing lacked standing to sue retailers and manufacturers of clothing and accessories for pets).

The allegations in plaintiffs' complaint undermine any contention that they are competitors of Rubicon. Plaintiffs allege in their complaint that EMT manufactures crackle, material from which sapphire crystals are made, but that Rubicon manufactures sapphire crystals, the end product. Compl. ¶¶ 22, 29-30. In their response to the motion to dismiss, plaintiffs contend they have standing under the Lanham Act because EMT "is a worldwide *distributor* of the final product - sapphire crystal." Pls.' Br. 4 (emphasis in original). But that is not what they allege in their complaint, and a brief in response to a motion to dismiss is not the place to amend a complaint. On the current state of the pleadings, plaintiffs lack standing to sue for false advertising under the Lanham Act, because they do not compete on the same level of business as Rubicon.

There is a second problem with plaintiffs' Lanham Act claim. "[I]n order to recover damages for a purported Lanham Act violation, the plaintiff must demonstrate that it has been damaged by actual consumer reliance on the misleading statements." *L.S. Heath & Son*, 9 F.3d at 575 (internal quotation marks omitted). *See generally Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 2009 WL 3460808, at *9 (7th Cir. 2009) ("The purpose of the false-advertising provisions of

7

the Lanham Act is to protect sellers from having their customers lured away from them by deceptive ads."). Plaintiffs make no allegation that any consumer has actually relied on Rubicon's allegedly false statements in a way that injured plaintiffs. Absent such an allegation, they have not stated a Lanham Act claim.

3.  **Illinois Deceptive Trade Practices Act claim**

Plaintiffs allege that Rubicon has violated the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2(a)(7), by making false representations regarding its products. In their response to the motion to dismiss, plaintiffs concede that this claim is governed by the same legal rules that govern their Lanham Act claim. Pls.' Br. 10. For this reason, and because the Court has concluded that plaintiffs have failed to state a Lanham Act claim, the Court dismisses plaintiffs' IDTPA claim.

4.  **Common law fraud claim**

Rubicon argues that plaintiffs have failed to plead the circumstances of their claim of common law fraud with the particularity required by Federal Rule of Civil Procedure 9(b). The Court disagrees. A plaintiff claiming fraud must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (citations omitted); *see also Uni\*Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) ("[i]n other words, the plaintiff must plead the 'who, what, when, and where' of the alleged fraud."). Plaintiffs have described in detail the statements they contend are false and why they are attributable to Rubicon.

8

Rubicon fares better with its argument that plaintiffs have failed to state a fraud claim. In Illinois, a claim of common law fraud requires "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 228 Ill. 2d 324, 342-43, 888 N.E.2d 24, 35-36 (2008). Rubicon contends that plaintiffs cannot establish the third, fourth and fifth of these requirements. The Court agrees.

Plaintiffs allege that Rubicon intended that its allegedly false statements "induce Plaintiffs, the investors and the general public to act [by investing in the company] . . . . The Plaintiffs, the investors and the general public justifiably relied upon the truth of the statements and invested with [Rubicon]." Compl. ¶¶ 83-84. Plaintiffs do not allege, however, that the false statements caused them to invest in Rubicon – nor could they, as plaintiffs quite clearly contend they knew Rubicon's statements were false. In short, they have failed to allege reliance, let alone justifiable reliance. In addition, plaintiffs have not alleged that they were damaged by their reliance on Rubicon's statements, as the only damage they allege is harm to their reputation. *See* Compl. ¶ 85.

**5.    Defamation claim**

Rubicon contends that its statements about its history do not refer to Mogilevsky and thus do not amount to actionable defamation. Rubicon also asserts that it has made no statements about EMT and, as a result, EMT cannot claim defamation.

Rubicon also contends its statements can be innocently construed and thus are not defamatory.

Defamation under Illinois law consists of a false statement of fact that "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [the plaintiff]." *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009) (internal quotation marks and citation omitted). To prove defamation, a plaintiff "must show that a defendant made a false statement concerning the plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by the defendant, and that the plaintiff suffered damages as a result." *Id*.; *see also, e.g., Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009).

Plaintiffs characterize their claim as a claim of defamation *per se*. *See* Pls.' Br. 7; Compl. Count 3 (heading). Defamation is actionable *per se* when the statement is "so obviously harmful that injury to the plaintiff's reputation can be presumed." *Lott*, 556 F.3d at 568. In Illinois, there are five categories of defamation *per se*,[1] only one of which is potentially relevant: "statements that prejudice a party, or impute a lack of ability, in his profession [or business]." *Id*.

---

[1] "Illinois law recognizes five categories of statements which are considered actionable *per se*: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication." *Van Horne v. Muller*, 185 Ill. 2d 299, 307, 705 N.E.2d 898, 903 (1999).

Plaintiffs claim that the scientific community knows that Rubicon does not use EMT's crackle. They contend that Rubicon's statements asserting that it uses a unique method to produce its crystals and that its crystals are 99.999% pure are false and defame EMT because, plaintiffs contend, it is scientifically impossible for Rubicon to achieve that level of purity without using EMT's crackle. Plaintiffs also contend that Rubicon's statements leave Mogilevsky and attribute the company's success to others. In essence, plaintiffs argue, Rubicon is claiming as its own achievements that were actually Mogilevsky's. This, they contend, makes "Plaintiffs appear as liars to the rest of the community and lose business and respect as a result." *Id.* 7.

A statement is defamatory *per se* "if its harm is obvious and apparent on its face." *Green v. Rogers*, 234 Ill. 2d 478, ___ N.E.2d ___, 2009 WL 3063399, at *7 (Ill. Sept. 24, 2009). To put it another way, "[t]he defamatory character of the statement must be apparent on its face, and extrinsic facts [must be] unnecessary" to ascertain its defamatory character. *Bel-Grade, Inc. v. Etheridge*, 229 Ill. App. 2d 624, 625, 593 N.E.2d 91, 92 (1992). There is nothing on the face of any of the statements cited by plaintiffs that defames Mogilevsky or EMT; indeed, the statements do not mention them at all. Rather, extrinsic facts are needed to ascertain the statements' purportedly defamatory character. For this reason, plaintiffs have failed to state a claim of defamation *per se*.

### 6. Breach of contract claim

Mogilevsky alleges that Rubicon breached their separation agreement by making false statements about him and about its own products, knowing that these statements

11

would disparage Mogilevsky's reputation. Rubicon claims that it has abided by the agreement.

Section 4(b) of Mogilevsky and Rubicon's agreement provides that Rubicon "will not make any oral or written statements about Mogilevsky or his financial condition which are intended or reasonably likely to disparage Mogilevsky in the community or among his employers, clients, employees, business partners, or prospects." Compl., Ex. A ¶ 4(b). Under Illinois law, courts "must not interpret contractual language in a way contrary to the plain, obvious, and generally accepted meaning of its terms." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 715 (7th Cir. 2009). The contract precludes Rubicon only from making statements about Mogilevsky or his financial condition. As previously explained, Rubicon has made no statements about Mogilevsky. Accordingly, the Court concludes that Rubicon has failed to allege a breach of the separation agreement.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion to dismiss [docket no. 13] The Court will convert this to a final judgment of dismissal with prejudice unless, on or before January 4, 2010, plaintiffs seek leave to file an amended complaint that states a viable legal claim.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 14, 2009