IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMERGING MATERIAL TECHNOLOGIES, INC. and RADION MOGILEVSKY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 09 C 3903 |
| RUBICON TECHNOLOGY, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Radion Mogilevsky sued Rubicon Technology, Inc. for (among other things) securities fraud under SEC Rule 10b-5, which makes it unlawful for any person to make materially false statements in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b-5. The Court dismissed Mogilevsky's claim, with leave to amend, on the ground that his complaint – a "verified" complaint, i.e., submitted under oath – made it clear that he could not possibly show that he relied on the claimed false statements in connection with his purchase or sale of Rubicon stock. *Emerging Material Techs., Inc. v. Rubicon Tech., Inc.*, No. 09 C 3903, 2009 WL 5064349, at *3 (N.D. Ill. Dec. 14, 2009).

Mogilevsky has now sought leave to file a proposed amended Rule 10b-5 claim. Rubicon argues that the claim remains deficient and that the Court should not grant Mogilevsky leave to file it. For the reasons stated below, the Court concludes that Mogilevsky cannot maintain a claim based on his acquisition of some 32,579 shares of

Rubicon stock in 2007 but that he can, at least for now, maintain a claim based on his acquisition of another fifty shares in April 2009.

## Discussion

Rubicon is a successor entity to a company that Mogilevsky founded. It makes and sells sapphire crystals, which are used in electronic devices. Mogilevsky alleged in his verified complaint that Rubicon had made false statements that it uses a superior method of growing sapphire crystals. Mogilevsky made it clear in his original complaint that he knew these statements were false because, due to his association with the company, he was very familiar with the method that Rubicon actually used.

In dismissing Mogilevsky's original Rule 10b-5 claim, the Court noted that "[t]he entire thrust of Mogilevsky's complaint is that he knows that Rubicon's statements are false." As a result, the Court concluded, Mogilevsky could not claim that he relied upon or was deceived by the lie. *Emerging Material Techs.,* 2009 WL 5064349, at *3. As an alternative basis for dismissal, the Court noted that "Mogilevsky does not even attempt to allege that he purchased or sold stock based on any of the claimed misrepresentations, all of which he contends were made after he became a Rubicon shareholder." *Id.*

In granting Rubicon's motion to dismiss, the Court stated that its order would convert to a final judgment unless, prior to January 4, 2010, Mogilevsky "seek[s] leave to file an amended complaint that states a viable legal claim." *Id.* at *6. Mogilevsky sought leave to file an amended complaint. The Court continued the motion pending briefing regarding, among other things, the legal sufficiency of his proposed revised

Rule 10b-5 claim.

Mogilevsky's proposed new Rule 10b-5 claim is based on two separate acquisitions of Rubicon stock, one in 2007 and another in April 2009.  In Mogilevsky's original complaint – which, the Court again notes, he submitted under oath – he alleged that he acquired his Rubicon shares in or about 2001.  Compl. ¶ 20.  In his original Rule 10b-5 claim, Mogilevsky relied on alleged misstatements by Rubicon in an SEC filing made a number of years after that.  *Id.* ¶ 132.  As the Court has noted, Mogilevsky's complaint made it clear that he knew at that time that Rubicon's statements were false.

In his proposed amended Rule 10b-5 claim, Mogilevsky has shifted gears.  The claim is still based on alleged misrepresentations in Rubicon's SEC filing, which he identifies as having been filed on September 5, 2007.  Proposed Replacement Am. Compl. ¶ 8.  Mogilevsky no longer refers, however, to his acquisition of Rubicon stock in 2001.  Rather, he now says that he "acquired 32,579 shares of Rubicon stock" on November 21, 2007.  *Id.* ¶ 9.  He also says that he acquired fifty additional shares on April 17, 2009.  *Id.*  The latter acquisition came only six days before Mogilevsky first asserted a fraud claim against Rubicon, via an earlier lawsuit he filed in state court.

In its brief opposing Mogilevsky's request for leave to amend his Rule 10b-5 claim, Rubicon argued that Mogilevsky was trying to pull the wool over the Court's eyes when he claimed to have "acquired" 32,579 shares in November 2007.  Rubicon argued that what actually happened in November 2007 was that shares that Mogilevsky already owned were revalued and converted in the course of an initial public offering of Rubicon stock, and he received a new stock certificate.  In other words, Rubicon contended, Mogilevsky did not actually purchase any new stock in November 2007.  In his reply

3

brief, Mogilevsky acknowledged the truth of Rubicon's contention. Specifically, he said that "[i]t is correct that Plaintiff did not buy the stock at IPO." Pl. Reply at 13. Mogilevsky explained that in 2001, he purchased preferred shares of stock and that during the IPO, which took place in 2007, those shares and other stock he held "were re-valued and converted, and the Plaintiff 'acquired' a new stock certificate representing the new shares." *Id.* Mogilevsky has also asserted in his verified proposed amended complaint that he sold all of that stock in May and September 2008. *See* Replacement Am. Compl., Attachment 1.

In short, Mogilevsky's claim and his arguments make it clear that he actually acquired his stock in 2001, some six years before the misrepresentations upon which he relies for his Rule 10b-5 claim. Given that fact, that Mogilevsky cannot show that he relied on the later misrepresentations in purchasing stock. Nor can he show that his purchase of the stock or its price was affected in any way by those not-yet-made misrepresentations. In short, his proposed new claim regarding the 32,579 shares suffers from one of the same deficiencies the Court found in dismissing his original claim.

In addition, Mogilevsky does not claim that he was harmed by the alleged misrepresentations when he sold the stock. Nor could he. Based on his proposed amended complaint, Mogilevsky contends that the market was not yet aware of any fraud at the time he sold. For this reason, Mogilevsky cannot establish "'loss causation,' i.e., a causal connection between the material misrepresentation and the loss," which is a requirement for any Rule 10b-5 claim. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). As to the 32,579 shares, this case is just like the

4

hypothetical one the Supreme Court described as insufficient in *Dura Pharmaceuticals*: "if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id.*

This leaves the fifty shares that Mogilevsky acquired on April 17, 2009. Mogilevsky alleges that he had no knowledge of Rubicon's SEC filing when he purchased that stock for approximately $440. *See* Replacement Am. Compl. ¶ 15. Rubicon argues that this allegation is contrary to what Mogilevsky said in his original complaint in this case.

The problem with Rubicon's argument is that Mogilevsky did not say in the original complaint that he was aware of the SEC filing. He described a series of false statements to the public that he claimed Rubicon made at various dates in 2008 and 2009, *see* Compl. ¶¶ 48-78, and said, referring to these statements, that "the Plaintiffs, the investors and the general public justifiably relied upon the truth of the statements and invested with the Defendant." *Id.* ¶ 84. But the statements he referenced there did not include the SEC filing. So Mogilevsky's current allegation that he was unaware of the SEC filing does not directly contradict an allegation in his original complaint.

Were Mogilevsky now alleging that Rubicon had directly deceived him via the SEC filing, his earlier allegation (under oath) that he knew similar statements by Rubicon were false would undercut any claim of reliance. But Mogilevsky does not claim direct deception. Rather, he relies on a fraud-on-the-market theory: he contends that the SEC filing artificially inflated the market price of Rubicon's stock and that the price was inflated when he purchased in April 2009. A fraud-on-the-market claim is premised upon the notion that "[a]n investor who buys or sells stock at the price set by

5

the market does so in reliance on the integrity of that price." *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). The Supreme Court held in *Basic* that "an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." *Id.* As a result, the Court cannot, at this time, dismiss Mogilevsky's Rule 10b-5 claim to the extent it is based on the purchase of the fifty shares in April 2009.

The Court made it clear in *Basic*, however, that "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Id.* at 248. It stands to reason that the presumption would be rebutted as to a purchaser of securities who is aware at the time of purchase that the securities issuer is deceiving the public. Such a person cannot have relied on the integrity of the market price.

There is a very good chance that Mogilevsky, having purchased stock just a few days before filing suit, was well aware of the claimed deception by Rubicon. If so, the odds are very strong that any presumption of reliance will be rebutted, and the remainder of his Rule 10b-5 claim will fail. But on the present record, and on a motion to dismiss for failure to state a claim, the Court cannot make such a finding.

That said, it is difficult to avoid the impression that Mogilevsky may be playing fast and loose with the facts to attempt to salvage his Rule 10b-5 claim. It is beyond dispute that there has been some significant shifting in Mogilevsky's position between the time of the Court's earlier ruling and his current proposed complaint and supporting brief. And as noted earlier, Mogilevsky purchased the fifty shares just six days before

he originally sued Rubicon for fraud. This rather strongly suggests that the purchase was made strategically to enable him to file suit. (Rubicon suggests that the timing might be a basis for dismissal in and of itself, but it has cited no authority to support that suggestion, and the Court does not intend to do Rubicon's work for it.) And as the Court has indicated, there is a very good chance that Mogilevsky was well aware of Rubicon's claimed deception at the time he purchased the fifty shares.

For these reasons, though the Court will permit Mogilevsky to file his Rule 10b-5 claim as to the fifty shares, the Court intends to structure discovery on that claim so that it focuses first on the issue of reliance. Other discovery regarding the Rule 10b-5 claim will be held in abeyance until the Court has had an opportunity to consider a summary judgment motion focused on that issue.

Mogilevsky's co-plaintiff Emerging Material Technologies, Inc. has filed a proposed amended Lanham Act claim to replace the one that the Court earlier ruled deficient. *See Emerging Material Techs.*, 2009 WL 5064349, at *3-4. The Court directs Rubicon to respond to the request to amend the Lanham Act claim by April 1, 2010 and directs plaintiffs to reply by April 12, 2010.

## Conclusion

For the reasons stated above, plaintiff Mogilevsky's request to file an amended Rule 10b-5 claim is granted in part. He may pursue the amended Rule 10b-5 claim concerning his purchase of fifty shares of Rubicon stock in April 2009. His allegations regarding his earlier acquisition of Rubicon stock are stricken from the amended claim. Defendant is directed to answer the amended Rule 10b-5 claim by April 12, 2010. The case is set for a status hearing and possible ruling on the proposed amended Lanham

Act claim on April 19, 2010 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 11, 2010